```
                    United States District Court
                      District of Massachusetts
 _____
                               )
UNITED STATES LIABILITY        )
INSURANCE COMPANY,             )
                               )
        Plaintiff,             )
                               )   Civil Action No.
        v.                     )   13-11543-NMG
                               )
BENCHMARK CONSTRUCTION SERVICES,)
INC.,                          )
                               )
        Defendant.             )
 _____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from injuries purportedly suffered by a painter during the renovation of a home in Newton, Massachusetts. The painter filed a complaint in the Middlesex Superior Court against the general contractor for the renovation project, defendant Benchmark Construction Services, Inc. ("defendant" or "Benchmark"). Benchmark tendered the claim to plaintiff United States Liability Insurance Company ("plaintiff" or "USLIC"). USLIC now seeks a declaratory judgment from this Court that it has no obligation to defend or indemnify Benchmark in the case filed by the painter.

USLIC filed its Complaint in June, 2013. Cross motions for summary judgment are currently pending before the Court and a trial is scheduled for August 4, 2014.

-1-

**I.   Background**

Benchmark is a construction company that, among other things, renovates residences.  USLIC issued Benchmark Commerical Liability Insurance Policy No. CL1151220D ("the Policy") for a period beginning on June 23, 2009 and ending on June 23, 2010.  The premium of $9,122.88 was calculated to cover, among other things, "subcontracted work" by contractors.

The Policy covers lawsuits that allege, *inter* *alia*, bodily injury based upon an accident that occurred within the United States.  Coverage by the policy is, however, narrowed by an exclusion for

> "Bodily injury" to ... [a]n "employee" of the insured arising out of and in the course of
>
> (a)   Employment by the insured; or
>
> (b)   Performing duties related to the conduct of the insured's business....

Commercial General Liability Coverage Form, § 1.2(e), Docket No. 25, Ex. 1, at 13.

That exclusion was deleted in its entirety by "Endorsement L500", which is subtitled "Bodily Injury Exclusion - All Employees, Volunteer Workers, Temporary Workers, Casual Laborers, Contractors, and Subcontractors" and is appended to the Policy.  Endorsement L500 excludes, in relevant part, coverage for

1. "Bodily injury" to any "employee", "volunteer worker", "temporary worker" or "casual laborer" arising out of or in the course of:

   (a) Employment by any insured; or

   (b) Performing duties related to the conduct of any insured's business; [or]

2. "Bodily injury" to any contractor, subcontractor or any "employee", "volunteer worker", "temporary worker" or "casual laborer" of any contractor or subcontractor arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such contractor, subcontractor or "employee", "volunteer worker", "temporary worker" or "casual laborer" of such contractor or subcontractor for which any insured may become liable in any capacity....

Endorsement L500, Docket No. 25, Ex. 1, at 37. The Policy does not, however, define the term "contractor".

In July, 2009, Benchmark entered into a contract with homeowners Tom and Sue Ghezzi-Guarino ("the Ghezzis") to renovate their home in Newton, Massachusetts ("the Residence"). Plans for the renovation were designed by Thomas Huth, who was doing business as Thomas R. Huth Architects ("Huth").

Huth hired Sara Egan ("Egan"), who was doing business as "Painted Design", to apply decorative paint to Venetian plaster on an interior wall of the Residence. Benchmark had no contractual relationship with Huth or Egan and Egan's work under her contract with Huth was outside of the scope of Benchmark's contract with the Ghezzis.

On March 5, 2010, Megan Bailey ("Bailey"), an employee of Egan, allegedly sustained bodily injury while applying decorative paint to the interior wall of the Residence. She alleges that she fell from a ladder which was erected on top of scaffolding. Benchmark had no contractual relationship with Bailey. On that date, Benchmark had nearly completed the renovation and its employees were removing tools and installing baseboard at the Residence.

Bailey filed suit in Middlesex Superior Court on the grounds that she was injured due to Benchmark's negligence. Benchmark demanded that USLIC defend and indemnify Benchmark pursuant to the Policy. In January, 2013, USLIC notified Benchmark that the Policy did not cover the Bailey lawsuit because the claims fell within the exclusion in Endorsement L500 for bodily injuries to employees of contractors.

## II. Cross Motions for Summary Judgment

### A. Legal Standard

Massachusetts law controls in actions that invoke the diversity jurisdiction of this Court. B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 38 (1st Cir. 2004) (citing U.S. Liab. Ins. Co. v. Selman, 70 F.3d 684, 688 (1st Cir. 1995)). Under Massachusetts law, the interpretation of an insurance contract is a question of law for the Court to decide. Id. (citing Ruggerio Ambulance Serv., Inc. v. Nat'l Grange Ins.

Co., 724 N.E.2d 295, 298 (Mass. 2000)). Where there are no disputes of fact, the correct application of the policy is a question of law that is properly resolved on summary judgment. B & T Masonry, 382 F.3d at 38-39 (citing Liberty Mut. Ins. Co. v. Metro Life Ins. Co., 260 F.3d 54, 61 (1st Cir. 2001)). Ultimately, the insurer bears the burden of demonstrating that coverage of a particular injury is excluded from the Policy. Id. (citations omitted).

When interpreting a contract, a court should account for what an "objectively reasonable insured, reading the policy language, would expect to be covered." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000) (quoting GRE Ins. Grp. v. Metro. Bos. Hous. P'ship, Inc., 61 F.3d 79, 81 (1st Cir. 1995)). Because the parties are presumed to have "tr[ied] to accomplish something rational," any reading must accord with common sense. Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001) (citations omitted). The policy should be "interpreted as a whole and construed so as to give a reasonable meaning to each of its provisions." JRY Corp. v. LeRoux, 464 N.E.2d 82, 87 (Mass. App. Ct. 1984) (citations omitted). Moreover,

> an interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable.

Jacobs v. U.S. Fid. & Guar. Co., 627 N.E.2d 463, 464 (Mass. 1994) (quoting Sherman v. Emp'rs' Liab. Assur. Corp., 178 N.E.2d 864, 866-67 (Mass. 1961)).

Any ambiguities in the meaning of an exclusionary provision are construed strictly against the insurer. Boazova v. Safety Ins. Co., 968 N.E.2d 385, 390 (Mass. 2012) (citing August A. Busch & Co. of Mass. v. Liberty Mut. Ins. Co., 158 N.E.2d 351 (Mass. 1959)). Ambiguity exists when policy language is "susceptible to more than one rational interpretation." Brazas, 220 F.3d at 4-5 (citations omitted). If two rational interpretations exist, "the insured is entitled to the benefit of the one that is more favorable to it." Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990) (citations omitted).

If the court determines that the policy language is unambiguous, it must construe terms according to their "plain and ordinary meaning," Brazas, 220 F.3d at 4 (quoting GRE, 61 F.3d at 81), and it may not alter that meaning in any way. Robbins v. Krock, 896 N.E.2d 633, 636-37 (Mass. App. Ct. 2008) (quoting Rogaris v. Albert, 730 N.E.2d 869, 871 (Mass. 2000)). It may, however, consult dictionary definitions of the term to ascertain that meaning. See Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 498-99 (1st Cir. 2005). Furthermore, the "reasonable

expectations" of an insured have no bearing upon an unambiguous contract because

> a party can have no reasonable expectation of coverage when that expectation would run counter to the unambiguous language of an insurance policy.

Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co., 734 F.3d 51, 57 (1st Cir. 2013) (citing Valley Forge Ins. Co. v. Field, 670 F.3d 93, 105 (1st Cir. 2012)).

**B.  Application**

    **1.  Ambiguity in Meaning of "Contractor"**

A threshold question is whether Endorsement L500 is ambiguous in excluding coverage for bodily injury to

> any contractor, subcontractor or any "employee", "volunteer worker", "temporary worker" or "casual laborer" of any contractor or subcontractor arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such contractor, subcontractor or "employee", "volunteer worker", "temporary worker" or "casual laborer" of such contractor or subcontractor for which any insured may become liable in any capacity....

Both parties focus on whether the isolated term "contractor", which is not defined the policy, is susceptible to multiple reasonable interpretations and is therefore ambiguous.

USLIC contends that the term "contractor" unambiguously refers to anyone with a contract. It notes that such a reading is supported by dictionary definitions of the term. For instance, Webster's New World College Dictionary (4th ed. 1999) defines "contractor" as

-7-

> a person who contracts to supply certain materials or
> do certain work for a stipulated sum, esp[ecially] one
> who does so in any of the building trades.

Benchmark responds that defining contractor as "a person who contracts" is irrational because it renders other terms of Endorsement L500 superfluous. In the alternative, it contends that there are other rational interpretations of "contractor" that include 1) a construction worker and 2) a non-employee independent contractor of Benchmark. The Court will address each of the three possible interpretations, seriatim.

### a. "Anyone with a contract"

Benchmark suggests that reading "contractor" to mean "anyone with a contract" results in redundancies because a subcontractor is also "anyone with a contract" and yet is listed separately. See Jacobs, 627 N.E.2d at 464 ("[A]n interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable." (quoting Sherman, 178 N.E.2d at 866-67)). Similarly, that broad definition would seem to render the first paragraph of Endorsement L500 superfluous because it refers to the employees of Benchmark, which is an entity with a contract, and therefore is duplicative of the term excluding coverage for "employees ... of any contractor".

Nevertheless, the broad definition is rational.  The First Circuit Court of Appeals has recognized that "redundancies abound" in insurance contracts and has therefore cautioned against overreliance on the canon that every word must be given an independent meaning. See Ardente v. Standard Fire Ins., 744 F.3d 815, 819 (1st Cir. 2014) (quoting TMW Enters., Inc. v. Fed. Ins. Co., 619 F.3d 574, 577-78 (6th Cir. 2010)); see also Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 68 (1st Cir. 2012) ("[I]nsurance policies are notorious for their simultaneous use of both belts and suspenders, and some overlap is to be expected." (internal citations omitted)); Valley Forge, 670 F.3d at 105.

Here, interpreting "contractor" broadly is not irrational merely because it results in redundancies when applied to an insured who happens to be both a contractor and employer. Moreover, the interpretations preferred by Benchmark do not necessarily avoid such redundancies.  For instance, construction workers who perform under a subcontract are a subset of construction workers who perform under a contract.

### b. "A construction worker"

Next, it is irrational to read "contractor" to mean "construction worker" merely because the term is frequently used to refer to those who work in the "building trades".  The term "building trades" sweeps broadly enough to include decorative

-9-

painting completed during a renovation and is not limited to those who perform carpentry or electrical work, for instance.

### c. "An independent contractor"

Finally, even if the Court were to accept that one plausible meaning of "contractor" includes an "independent contractor," Benchmark cannot prevail. There is no dispute that Egan was an "independent contractor" according to that definition and that Bailey was therefore an employee of an independent contractor. Benchmark suggests that, in light of the first paragraph of Endorsement L500, which refers to employees and other individuals who are employed by or perform services for the insured, "contractor" can reasonably be understood to mean "an independent contractor of the insured."

Limiting the term "contractor" to those in contractual privity with the insured contradicts the clear and unambiguous language of Endorsement L500, which excludes coverage for bodily injury to

> any "employee" ... of <u>any</u> contractor ... arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such contractor ....

(Emphasis added). Endorsement L500 cannot plausibly be read to limit the exclusion to only "independent contractors" of Benchmark. The term "any" is plain and unambiguous and the Court is not permitted to alter that meaning. <u>Robbins</u>, 896

N.E.2d at 636-37; see also James River Ins. Co. v. Keyes2Safety, Inc., No. 11-901, 2012 WL 30233334, at *4 (N.D. Ill. July 24, 2012) (finding unpersuasive the argument that exclusion "must have meant" to be limited to independent contractors and subcontractors of the insured when exclusion stated plainly that it applied to "any" contractor or subcontractor).

### 2. Application of Plain Meaning

Because "contractor" is unambiguous, the Court must apply the plain meaning of Endorsement L500. Bailey falls within that exclusion as an employee of any contractor who was injured while performing services and therefore USLIC is not required to indemnify or defend Benchmark against her claims.

That said, the Court can discern no reason why the parties would choose ex ante to have coverage depend on whether an injured party was performing subject to a contract at the time he or she was injured regardless of whether that contract was with the insured or some other entity and regardless of whether the contract was related to the subject matter of the Policy. See Fishman, 247 F.3d at 302 (explaining that parties to a contract are presumed to intend rational results). Nevertheless, the doctrine of "reasonable expectations" has no application here because it would be unreasonable for Benchmark to expect coverage that is precluded by the unambiguous language of an insurance policy. See Clark, 734 F.3d at 57 (citing Valley

Forge, 670 F.3d at 105).  If Benchmark wanted Endorsement L500 to sweep less broadly, it could have amended it to apply only to its contractors or subcontractors.  See James River, 2012 WL 30233334, at *4.  Having failed to do so, it may not now argue that the contract means other than what it says.

### 3. Duty to Defend

Because the language of Endorsement L500 is unambiguous, the issue of whether USLIC has a duty to defend is moot.  See Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 340 (Mass. App. Ct. 1983).

### ORDER

For the foregoing reasons, plaintiff's Motion for Summary Judgment (Docket No. 19) is **ALLOWED** and defendant's Motion for Summary Judgment (Docket No. 23) is **DENIED.**

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated July 8, 2014